UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ELAINE L. CHAO, Secretary of Labor, United States
Department of Labor,

                    Plaintiff,                                    5:07-CV-0449
                                                                  (NAM/GHL)

            v.

PARTY RENTAL ENTERPRISES, INC., a Corporation,
d/b/a ABLE LINEN SERVICE and DARYLE LOGUIDICE,
Individually and as Chief Executive Officer,

                    Defendants.
_____

**APPEARANCES**                          **OF COUNSEL:**

UNITED STATES DEPARTMENT OF LABOR
Patricia M. Rodenhausen, Regional Solicitor      Harold W. LeMar, Esq.
Office of the Solicitor
201 Varick Street, Room 983
New York, New York 10014
*Counsel for Plaintiff*

COSTELLO COONEY FEARON, P.L.L.C.           Samuel C. Young, Esq.
Salina Place
205 South Salina Street
Syracuse, New York 13202-1327
*Counsel for Defendants*

**Norman A. Mordue, Chief U.S. District Judge**:

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiff, the United States Department of Labor ("DOL"), commenced the above-

referenced action on behalf of in an individual named Lisa Gilfus who alleges that she was

discharged from the employ of defendants after causing or requesting the federal Occupational

Safety and Health Administration ("OSHA") to conduct an on-site inspection of defendants'

facility in Auburn , New York, on February 11, 2005.  DOL alleges that defendants' termination of Gilfus occurred in violation of section 11(c) of the Occupational Safety and Health Act of 1970, as amended, ("the Act"), 29 U.S.C. § 651 *et seq.*.  Said section prohibits discrimination and/or retaliation against employees who engage in protected activity under the Act, including "filing a complaint or insitut[ing] or caus[ing] to be instituted any proceeding under or related to this chapter."  Defendants failed to answer the complaint or to oppose plaintiff's request for entry of default by the Clerk of the Court on July 20, 2007.  Presently before the Court is plaintiff's motion for entry of default judgment against defendants and defendants' cross-motion to set aside their default and permit the filing of a late answer to plaintiff's claims.

## II.    FACTUAL BACKGROUND

On or about May 9, 2005, Joseph Crahan, a Regional Investigator employed by DOL and OSHA began an investigation of defendants Daryle Loguidice and Able Linen under section 11(c) of the Act as a result of a complaint by Lisa Gilfus.  During the course of Crahan's investigation, he contacted Mr. Loguidice to obtain information.  Mr. Crahan formally notified Loguidice of his investigation when he visited Loguidice's office in Cicero, New York.  Sometime in May 2005, the manager of Able Linen, Ed O'Donnell, provided Crahan with "five pieces of paper" in connection with his request for information about the Gilfus complaint.  On June 2, 2005, Daryle Loguidice told Mr. Crahan that it would take him "four to six weeks" to gather the information requested.  Between June 2005 and January 2006, Crahan asked for additional documents in two certified letters and at least ten telephone calls to either Mr. Loguidice or Mr. O'Donnell.  One of the letters which Crahan sent to defendants on June 21, 2005, by certified mail was returned as unclaimed.  In a second letter, dated June 30, 2005, Mr.

Crahan advised defendant Loguidice as follows:

> This correspondence is being re-sent to you . . . pursuant to the above captioned OSHA Section 11(c) discrimination complaint filing, which I formally notified you of during my May 9, 2005, visit to your Cicero, NY office.
>
> On June 2, 2005, during our telephone discussion regarding my request for information . . . you informed me that you would provide to me within . . . a very short period of time, a detailed written account of the facts and statement of your position with respect to the allegations that Complainant Lisa Gilfus has raised in her signed statement. . . .
>
> As I have yet to receive the aforementioned information from you, I am requesting that you submit to me at the above address . . . [a] detailed written account of the facts and statement of your position with respect to each allegation that Lisa Gilfus has raised in her signed statement (which a copy has been provided to you), in which she subsequently alleges she was discharged from your employ on February 22, 2005, in reprisal for allegedly causing an onsite OSHA inspection at your Auburn facility, commencing on February 11, 2005. . . .
>
> I am requesting that the above information be submitted to me at the above address by the close of business, July 11, 2005, so that all information may be considered prior to my arriving at a decision in this matter. In the event that the information is not received by said date, a decision will be rendered in this matter without the benefit of my considering same. . . .

Crahan did not receive a response to "most of his phone calls" or the June 30, 2005, letter.

On August 7, 2005, Mr. Crahan served administrative subpoenas on Daryle Loguidice, Able Linen, Ed O''Donnell and an Able Linen employee, Denise Dixon. The subpoenas required these persons to appear with relevant papers and documents before Investigator Crahan at DOL, OSHA's office in North Syracuse, New York on August 17, 2006. No one appeared in response to the subpoenas or contacted Crahan to discuss them.

3

On March 22, 2007, plaintiff's counsel sent a letter to Nicholas J. DeMartino, Esq., an attorney at the law firm of Costello Cooney & Fearon, who had represented defendant Daryle Loguidice in another matter before the DOL.  The letter stated as follows:

> This is in reference to an investigation conducted by [OSHA] of the above-referenced employer as to the termination of Lisa Gilfus.  The matter has been referred to this office for consideration of litigation. please advise this office as to whether you represent Party Rental Enterprises, Inc. and Daryl Loguidice.  If so, I would like to discuss this matter with you.

Plaintiff's counsel received no response to the March 22, 2007, letter.  On April 13, 2007, plaintiff's counsel sent a letter to defendant Loguidice which contained essentially the same information as the March 22, 2007, letter to Mr. DeMartino.  In the April 13, 2007, letter, plaintiff's counsel advised Mr. Loguidice that he "would like to discuss this matter with you or your representative."  Plaintiff's counsel received no response to the April 13, 2007, letter.  On April 26, 2007, plaintiff DOL filed its complaint in this matter.

On April 27, 2007, plaintiff sent to each defendant a copy of the complaint and "Notice of Lawsuit and Request for Waiver of Service of Summons."  Also on April 27, 2007, plaintiff's counsel sent to each defendant a letter enclosing a Notice which included the General Order #25 filing packet for the instant action.  The packet included a filing order, a case management plan, case assignment and motion schedules along with a consent form allowing the assigned magistrate judge to conduct all proceedings in the litigation.  The April 27, 2007, letters to defendants also advised them that an initial pre-trial conference was scheduled for October 24, 2007.  Neither plaintiff nor its counsel received a response to these letters or notices from either defendant.

On May 31, 2007, Investigator Crahan served defendants personally with copies of the

4

summons and complaint.  Neither defendant responded to service of the summons and complaint nor filed an answer.  On July 20, 2007, the Clerk of the Court entered default by defendants at plaintiff's request.  Notice of plaintiff's request for entry of default was sent to both defendants on July 20, 2007.  Neither defendant responded or objected to the Clerk's entry of default.

On July 23, 2007, plaintiff filed a Notice of Motion and Motion for Default Judgment and served said notice and motion papers on defendants.  The Court scheduled the motion to be submitted as of September 5, 2007.  On October 2, 2007, plaintiff's counsel re-sent the Notice forwarded to defendants on April 27, 2007, which included the Court's General Order #25 filing packet and again advised defendants that the Court's initial pre-trial conference was scheduled for October 24, 2007.  In the letter, plaintiff's counsel asked defendants to "[p]lease advise [him] as soon as possible as to whether [each defendant] had retained counsel in this matter."  Plaintiff's counsel received no response to these letters or notices from either defendant.  On October 15, 2007, plaintiff's counsel wrote to defendants to advise them that the initial pre-trial conference with the Court had been cancelled.  In the October 15, 2007, letter, plaintiff's counsel advised defendants that the Court had "directed the parties to notify [it] of the outcome of the pending motion for default judgment."  Plaintiff's counsel also provided his office telephone number to defendants.

Plaintiff's counsel, Harold LeMar, has submitted a declaration wherein he avers that none of the correspondence referred to herein as being sent by plaintiff or its counsel to Mr. DeMartino or defendants was returned by the post office.  Prior to October 23, 2007, Mr. LeMar states that he received no correspondence or telephone calls from either defendants or anyone on defendants' behalf.

On October 23, 2007, the Court received a letter motion from attorney Samuel Young, a

lawyer from the law firm of Costello Cooney & Fearon, advising the Court that his firm had

"just" been "retained to represent [defendants]" in this matter.  Mr. Young stated that upon

reviewing the Court's docket he had learned that a motion for default judgment had been filed by

plaintiff.  Mr. Young requested that the Court "delay issuing a decision" on plaintiff's motion for

default while his firm attempted to negotiate an agreement for filing of an answer to the complaint

by defendants.  Counsel for plaintiff objected immediately to defendants' request to hold its

motion for default  in abeyance.  Thereafter, the Court advised Mr. Young that he would have to

file a formal cross-motion to set aside defendants' default in this case.  Defendants filed said

cross-motion on October 25, 2007.

Defendants' attorney, Mr. Young, has submitted a declaration which avers as follows:

> Daryle Loguidice acknowledges that he received papers from the
> Secretary of Labor.  However, Mr. Loguidice is a layman, relatively
> unfamiliar with legal matters, and did not recognize that immediate
> action was required on his part.  As to the letter which was allegedly
> sent by plaintiff's counsel to Nicholas J. DeMartino, who was
> previously of counsel to our office, I have reviewed our files and have
> not found that correspondence.  Additionally, because Mr. DeMartino
> has since left our employment, I telephoned him at his new office, to
> ask him about the letter from the Department of Labor.  He states that
> he does not recall ever seeing that letter.
>
> Defendant Daryle Loguidice came to our office this week to engage
> our firm to represent the defendants in this matter.  While Mr.
> Loguidice was aware that a motion had been brought by the
> government, he was not aware that the defendants' time to respond to
> the motion had already passed.  Upon reviewing the Court's docket
> and file documents on PACER, I learned of the status of the motion,
> and that the plaintiff's motion for default judgment was presently
> before the Court.  I immediately called Harold LeMar, Esq., counsel
> for the Department of Labor, in order to inquire whether an agreement
> could be reached for the defendants to file an answer on the merits of
> this action.
>
> Defendant does intend to vigorously defend this case on the merits,
> and in fact has a meritorious defense.  Plaintiff's claim in their
> complaint that Lisa Gilfus was discharged by the defendants "because

she engaged in activity protected by Section 11(C)(1) of the Act." It is the defendants' position that Ms. Gilfus was not discharged for engaging in any protected activity, but rather was discharged for poor performance as an employee. Specifically, she was frequently late or absent from work, abused the company's sick leave policy, and generally failed to meet the company's expectations in the performance of her duties. Defendant's termination of Ms. Gilfus had absolutely nothing to do with any complaint which Ms. Gilfus may have made with the plaintiff. Proof of Ms. Gilfus's poor job performance will be provided during this litigation.

The plaintiff would not be at all prejudiced by the denial of its motion for default judgment. Defendants' late service of this answer only delayed these proceedings for several months and there is no reason to believe that this short delay had any effect on the plaintiff's ability to gather witnesses or evidence in support of its case. Moreover, as set forth above, undersigned counsel took immediate action to correct the potential default upon becoming aware of its existence. The defendants' tardiness in responding to the plaintiff's complaint and motion papers was not willful but, as set forth above, was due to lack of understanding as to the legal papers being served and the need to immediately respond to them.[1]

Defendant Loguidice, who avers that he is the "President of Party Rental Enterprises, Inc.," a named defendant in the instant action, has submitted an affidavit wherein he states as follows:

---

[1] The Court will accept the factual averments of Mr. Young concerning his own actions in this case or the actions of members of his law firm as evidentiary since they are based on personal knowledge. And while the Court can consider Mr. Young's hearsay statement concerning what Mr. DeMartino, a former partner of the firm, **said** about the March 22, 2007, it is not dispositive of what Mr. DeMartino **knows** about the letter or the pendency of DOL's investigation of defendants in or after March 2007. The Court is inclined to disregard Mr. Young's characterization of Mr. Loguidice's failure to take appropriate legal action early on in this case as "not wilful" since, according to his own statement, he did not have any involvement in or knowledge of plaintiff's claims against defendants until the week of October 23, 2007. Mr. Young does not state the basis of his personal knowledge of Mr. Loguidice's experience with legal matters, his state of mind or his motivating thoughts in connection with the instant litigation. Thus, Mr. Young lacks personal knowledge of the truth of his conclusory assertions that Mr. Loguidice is: 1) "relatively unfamiliar with legal matters;" and 2) that he "did not recognize that immediate action was required on his part." Consequently, Mr. Young's declaration has no evidentiary value in regard to determining the wilfulness of defendants' default.

> I did receive papers from the plaintiff in this matter.  However, I am not an attorney and I did not realize that these papers required an immediate response on my part.  I did not show these papers to my attorneys until this week.  I realize now that it was unwise of me to delay showing these papers to my attorneys for their prompt attention.  However, there was no intent by me to default on this action.  Rather, I vigorously deny the allegations made by the plaintiff in her complaint.  my company did not discharge Lisa Gilfus for engaging in protected activity or making complaints against the company.  Instead, Ms. Gilfus was discharged for a chronic pattern of absenteeism, tardiness, abuse of sick leave and failure to adequately perform her job duties.  Both myself and former co-workers of Ms. Gilfus are prepared to testify as to her inadequacies as an employee and it was these inadequacies which were the basis for her discharge.  I look forward to presenting evidence to attest to this during the course of this litigation.  I apologize to the court for my delay in answering the plaintiff's complaint, but I respectfully request that the court excuse this delay, accept our answer and permit us to proceed with this litigation on the merits.

In support of defendants' request to set aside their default, defendants' counsel also argues that there is "at least some question as to the sufficiency of the service of the complaint on the corporate defendant" since there is no indication on the affidavit of service prepared by Mr. Crahan who he served on behalf of Party Rental Enterprises, Inc..  Given the acknowledgment by Mr. Loguidice that he is indeed the President of Party Rental Enterprises, Inc., and the averment of Mr. Crahan that he personally served Mr. Loguidice on behalf of the corporate defendant, the Court does not persuaded there was any procedural defect in service of the summons and complaint.  Further, even assuming a procedural defect in service, Mr. Loguidice does not assert that he and his company did not actually receive the summons and complaint or that they were not aware of the proceedings against them.

**III.    DISCUSSION**

A.    <u>Relevant Legal Standard</u>

"The procedural steps contemplated by the Federal Rules of Civil Procedure following a

defendant's failure to plead or defend as required by the Rules begin with the entry of a default by the clerk upon a plaintiff's request." *Meehan v. Snow*, 652 F. 2d 274, 276 (2d Cir. 1981) (citing Fed. R. Civ. P. 55(a).  Pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside.  *See id.*  "If that motion is not made or is unsuccessful, and if no hearing is needed to ascertain damages, judgment by default may be entered by the court or, if the defendant has not appeared, by the clerk."  *Id.* (citing Fed. R. Civ. P. 55(b)).  In any other case, other than a sum certain, application must be made to the court for a default judgment.  *See* Fed. R. Civ. P. 55(b)(2).

Fed. R. Civ. P. Rule 55(b)(2) and Local Rule 55.2 set forth the procedural prerequisites a plaintiff must satisfy before obtaining a default judgment.  A litigant must: (1) properly serve defendant with a summons and complaint (to which no response has been made); (2) obtain an entry of default; and (3) provide an affidavit setting forth the facts required by the Fed. R. Civ. P. and L.R. 55.2(a) which include affirmation that the defaulting defendant is not an infant or incompetent, or in the military service.  *See* Fed. R. Civ. P. 55(b)(2); N.Y.N.D.L.R. 55.1 and 55.2. Upon review of plaintiff's motion, which was filed unopposed, it appears that all of the above criteria have been established and that the Court may properly grant plaintiff's application for a default judgment.  However, as referenced above, subsequent to plaintiff having filed its motion for a default judgment, defendants filed an application to set aside the entry of default herein.

After default or a default judgment has been entered, Rule 55(c) of the Fed. R. Civ. P. grants a litigant the right to petition to set either aside.  To wit, a party may move to set aside the entry of default by a clerk for "good cause" or to set aside a default judgment in accordance with Rule 60(b).  Fed. R. Civ. P. 55(c).  Because Rule 55(c) does not define the term "good cause," the Second Circuit, amongst many other courts, has established three criteria that must be assessed in

order to decide whether to relieve a party from default or from a default judgment.  *See Enron Oil Corp., v. Diakuhara*, 10 F. 3d 90, 96 (2d Cir. 1993).   These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.  *See id.* (citations omitted).  "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result."  *Id.* (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986).

In the context of describing a district court's discretion in applying the above factors, the Second Circuit has noted:

> Default procedures, of course, provide a useful remedy when a litigant is confronted by an obstructionist adversary.  Under such circumstances those procedural rules play a constructive role in maintaining the orderly and efficient administration of justice. *See* 10 Charles A. Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2693, at 477-79.  Yet, because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party.  In other words, "good cause" and the criteria of the Rule 60(b) set aside should be construed generously. *See* 6 James W. Moore *et al.*, MOORE'S FEDERAL PRACTICE ¶ 55.10[1], at 79 (2d ed. 1993).

*Enron*, 10 F. 3d at 96 (balance of citations omitted).  It is with these considerations in mind that the Court addresses the present motions.

B.    Substantive Standard Applied

1.    Willfulness of Default

The Second Circuit has interpreted "willfulness," in the context of a default, to refer to conduct that is more than merely negligent or careless. *See, S.E.C. v. McNulty*, 137 F. 3d 732, 738 (2d Cir. 1998) (citing *American Alliance Insurance Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d

Cir. 1996) (default due to filing mistake by defendant's in-house counsel's clerk, held not willful); *Davis v. Musler*, 713 F.2d 907, 915-16 (2d Cir. 1983) (default due to failure to note that complaint in second suit, served simultaneously with subpoenas and deposition notices in similar first suit, initiated a new lawsuit, may be found nonwillful); *Enron Oil Corp*., 10 F.3d at 97 (failure to answer second amended complaint should be held nonwillful if *pro se* defendant, who had timely answered prior complaints and promptly opposed motion to enter default, did not, as he claimed, receive second amended complaint)).  On the other hand, a court may find a default to have been willful where the conduct of a litigant or his or her counsel was egregious and not satisfactorily explained.  *See id.* (citing *American Alliance*, 92 F.3d at 60-61 (discussing cases)); *see also United States v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976) ("*Cirami I*") (attorney failed, for unexplained reasons, to respond to motion for summary judgment); *Chira v. Lockheed Aircraft Corp*., 634 F.2d 664, 666 (2d Cir. 1980) (attorney failed, for flimsy reasons, to comply with scheduling orders); *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243-44 (2d Cir. 1994) (party failed, for untenable reasons, after "purposely evad[ing] service for months," to answer  complaint); *Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1117 (1979) (counsel failed, for incredible reasons, to appear for a scheduled pretrial conference and unaccountably delayed more than 10 months before moving to vacate the ensuing default).

In the present case, the evidence clearly demonstrates that not only did defendants receive notice of the litigation, they knew for almost two years prior to commencement of this action that it would be forthcoming.  Beginning in May 2005, defendants refused to cooperate with investigator Crahan, ignored his letters, ignored his telephone calls, ignored his subpoenas and declined to provide any evidence, argument or documentation in connection with Crahan's

investigation.   In spite of Crahan's warning that he would make his determination in the Gilfus case with or without defendants' input, defendants chose not to participate in the investigation and/or offer a defense to the claim of unlawful retaliation.

Prior to commencement of the action, counsel for plaintiffs also sent correspondence to defendants and to defendants' counsel of record at DOL advising them that the Gilfus matter had been referred to the agency for "consideration of litigation."  Defendants do not contend that they did not receive this letter or notice of commencement of the action or a copy of the summons and complaint when it was served.  Indeed, defendants do not dispute any of the facts asserted by Investigator Crahan concerning their stonewalling of the administrative investigation in this case. With the exception of the June 21, 2005, letter sent by certified mail which was returned to Investigator Crahan as "unclaimed," there is no evidence that any of the correspondence sent to defendants in this case by Crahan or plaintiff's counsel was returned.

Moreover, it is apparent that plaintiff's counsel kept defendants apprised of each aspect of the litigation once it was commenced including the scheduling of a pre-trial conference, the filing of the request for entry of default, the granting of said request and the filing of a motion for default judgment.  For nearly six months after the complaint was filed, defendants ignored *in toto* any obligation to respond to the litigation, contact the Court, or contact plaintiff's counsel. Defendants took absolutely no action to remedy their failure to take appropriate legal action for three months following entry of default by the Clerk.  Plaintiff's motion for default judgment was filed in July 2007.  Defendants were required to reply on or before August 20, 2007, and the motion was returnable on September 7, 2007.  According to Mr. Young, Mr. Loguidice waited until the week of October 25, 2007, to "come to their office" and "engage [his] firm to represent the defendants in this matter."  However, it is apparent from the record that Mr. Young's law firm

had represented defendants previously in matters before DOL and that DOL had sent notice of its

pending investigation and intent to interpose litigation to the Costello law firm in March 2007.

Mr. Young's statement concerning when Mr. Loguidice physically came into the office to retain

the firm to represent him in this matter seems carefully calculated to avoid the obvious question

of whether prior to the week of October 25, 2007, Mr. Loguidice had contacted Costello Cooney

& Fearon by telephone or e-mail about the case, or whether anyone at the law firm had contacted

to attempted to contact him concerning DOL's investigation.

The Court notes that despite the conclusory assertions of Mr. Young and Mr. Loguidice,

there is no evidence which demonstrates defendants did not understand the serious nature or legal

significance of the Gilfus complaint and the litigation commenced by DOL on her behalf.  Indeed,

Mr. Young plainly stated that Mr. Loguidice was only "relatively" unfamiliar with legal matters.

Rather, the record here plainly demonstrates that defendants simply chose to ignore their

opportunity to cooperate with DOL's investigation of the Gilfus complaint as well as their

obligation to respond to plaintiff's claims, or the request for entry of default and the motion for a

default judgment.  Based thereupon, the Court finds evidence of a pattern of deliberate avoidance

and/or indifference on the part of defendants which renders their failure to respond to the entry of

default in this case as willful.

2.    Meritorious Defense

In order to make a sufficient showing of a meritorious defense in connection with a

motion to vacate a default, the defendant need not establish his defense conclusively, *see, e.g.,*

*Davis v. Musler,* 713 F.2d at 916, but he "must present evidence of facts that, 'if proven at trial,

would constitute a complete defense,'" *Enron*, 10 F.3d at 98.  At bar, plaintiff asserts that

defendants fired Lisa Gilfus because she alerted DOL concerning employee safety issues at

defendants' premises which resulted in OSHA conducting an on-site inspection.  Defendant

Loguidice avers in conclusory terms that Gilfus was not fired for making complaints about the

company, but rather, based on chronic absenteeism, tardiness, abuse of sick leave and failure to

adequately perform her job duties.

Section 11(c)(1) of the Act provides, in relevant part, that "[n]o person shall discharge . . .

any employee because such employee has filed any complaint . . . under or related to this Act . .

. ."

29 U.S.C. § 660(c)(1).  DOL has issued regulations defining precisely when an employer's actions

constitute retaliation prohibited by section 11(c)(1):

> The proscriptions of section 11(c) apply when the adverse action
> occurs because the employee has engaged in protected activities. An
> employee's engagement in activities protected by the Act does not
> automatically render him immune from discharge or discipline for
> legitimate reasons, or from adverse action dictated by non-prohibited
> considerations.
>
> (b) At the same time, to establish a violation of section 11(c), the
> employee's engagement in protected activity need not be the sole
> consideration behind discharge or other adverse action.

29 C.F.R. § 1977.6(a), (b).  Under DOL regulations, "[i]f protected activity was a substantial

reason for the action, or if the discharge ... would not have taken place "but for" engagement in

protected activity, section 11(c) has been violated."  *Id.*  The question then is whether Lisa Gilfus

was discharged because she caused an onsite OSHA inspection to be made at defendants'

Auburn, New York location on or about February 11, 2005, or whether she was discharged

because of a record of absenteeism and undependability as defendant Loguidice now belatedly

claims.  "Even if defendant Loguidice's alleged concerns about Gilfus's lack of dependability and

record of absenteeism were otherwise justifiable, if they were not the actual motivating factor

14

which caused him to fire her on [February 22, 2005], her discharge in retaliation for protected activity exposes his company to liability under OSHA." *Donovan v. Comm. Sewing, Inc*., 562 F. Supp. 548, 553 (D. Conn. 1982).

Notably, defendant Loguidice does not dispute plaintiff's claim that Lisa Gilfus complained to DOL about safety violations which led to an on-site OSHA inspection of defendants' property and was thereafter terminated. The only "evidence" presented by defendant Loguidice in connection with proving the existence of a meritorious defense to plaintiff's claims herein are his conclusory statements that Lisa Gilfus was frequently absent or tardy, abused sick leave and failed to perform her job. "Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts." *See SONY Corp*., 800 F. 2d at 321. Once in default, a party cannot present a meritorious defense by mere conclusory statements. *See id.* (citing *Breuer Elec. Mfg. v. Toronado Sys. of America*, 687 F.2d 182, 186 (7th Cir. 1982)). Loguidice states that he and unidentified former co-workers are "prepared to testify" about her shortcomings as an employee. However, nowhere does Loguidice elaborate on a single fact concerning the inadequacy of Lisa Gilfus as an employee, nor does he explain why, if indeed her employment record was so poor, he waited until after she had complained to DOL about safety conditions to terminate her. Based thereupon, the Court finds that although Loguidice may have a meritorious defense to plaintiff's claims, he has not presented evidence of it to the Court. The affidavit that defendant Loguidice filed was "no more than [a] sworn conclusory denial[]." *Id.* Consequently, the Court finds that this factor weighs against setting aside defendants' default.

3.      Existence of Prejudice

Although plaintiff has not demonstrated that defendants' delay has prejudiced the case, "a

lack of prejudice does not establish 'good cause' to set aside entry of a default when defendants' delay is willful and their defenses are without merit." *S.E.C. v. U.N. Dollars Corp.*, 2003 WL 192181, *2 (S.D.N.Y. Jan. 28, 2003) (citing *Commercial Bank of Kuwait* , 15 F. 3d at 244) ("While the record does not strongly support a finding of prejudice, we need not scrutinize this factor further because [defendants'] willful default and the absence of meritorious defenses were sufficient to support the district court's disposition of the case.")

**IV.     CONCLUSION**

The Court finds that upon balancing of the three factors referenced by the Second Circuit in *Enron*, defendants have not established good cause for setting aside their default herein.  Based on the foregoing, it is hereby

ORDERED that the motion by defendants to set aside the Clerk's entry of default in this case is DENIED; and it is further

ORDERED that plaintiff's motion for a default judgment is GRANTED; and it is further

ORDERED that plaintiff make further application to the Court as is necessary to establish applicable damages, if any, in this case.

IT IS SO ORDERED.

Date: August 15, 2008

_____
Norman A. Mordue
Chief United States District Court Judge